SECOND DIVISION

June 1, 2004

No. 1-03-1199

WEST BELMONT, L.L.C., an Illinois ) Appeal from the 

Limited Liability Company, ) Circuit Court of

) Cook County.

Plaintiff-Appellant, ) 

) 

v. )

)

CITY OF CHICAGO, DEPARTMENT OF )

ADMINISTRATIVE HEARINGS and CITY OF )

CHICAGO DEPARTMENT OF REVENUE, ) Honorable 

) Alexander P. White,

Defendants-Appellees. ) Judge Presiding.               

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

In an attempt to stimulate economic growth and neighborhood revitalization, the Chicago City Council enacted a transfer tax exemption for real property "used primarily for commercial or industrial purposes.”

The plaintiff West Belmont, L.L.C. ("West Belmont") purchased property at 1711-17 West Belmont Avenue in order to develop and build residential townhomes.  West Belmont was denied a real property transfer tax exemption by the City of Chicago because the property was not "used primarily for commercial or industrial purposes" under the Chicago Municipal Code.  The circuit court affirmed the administrative hearing officer's decision upholding assessment of tax, penalties, and interest against West Belmont.  We affirm.  

FACTS

On January 26, 1998, West Belmont bought the property commonly known as 1711-1717 West Belmont Avenue in Chicago (the "property") from American National Bank and Trust Company of Chicago.  The property previously had been occupied by Roosevelt Chair & Supply Company ("Roosevelt"), a furniture retailer, wholesaler, and rental company.  Following the purchase, West Belmont demolished the furniture store and began selling and constructing residential townhomes on the land.  

West Belmont filed a declaration claiming the transfer was exempt under section 3-33-060(L) of the Chicago Municipal Code because it purchased real property used primarily for commercial purposes located in an enterprise zone.  Chicago Municipal Code §3-33-060(L) (1999).  After an investigation, the Department of Revenue ("Department") disallowed the exemption because the property was being developed to build townhomes--not a commercial or industrial purpose.

Chapter 3-33 of the Municipal Code imposes the Chicago Real Property Transfer Tax on "the privilege of transferring title to, or beneficial interest in, real property located in the city."  Chicago Municipal Code §3-33-030 (1999).  The tax is imposed on the transferee at the rate of $3.75 per $500.00 of the transfer price, or fraction thereof, of the real property or the beneficial interest in real property.  Chicago Municipal Code §3-33-030 (1999).  Section 3-33-060 lists transfers that are exempt from the tax.  The exemption at issue in this case exempts: 

"L. Transfers of title to, or beneficial interest in, real property used primarily for commercial or industrial purposes located in an enterprise zone, as defined in Chapter 16-12 of this Code."  Chicago Municipal Code §3-33-060(L) (1999).  

An enterprise zone is a depressed area of the City which has been designated a "proposed enterprise zone" by the City Council and approved and certified by the proper state or federal authorities as an enterprise zone.  Chicago Municipal Code §16-12-020 (1999).  Both parties agree the property is located in an enterprise zone.

The Department sent West Belmont a Notice of Tax Determination and Assessment requesting unpaid Real Property Transfer Tax and interest in the amount of $11,264.06.  The Department sent a second notice for $14,934.37, including penalties for negligent and late payments.   

On November 19, 1998, West Belmont filed a protest and petition for hearing with the City.  On December 23, 1999, West Belmont filed an amended protest.  West Belmont contended the transfer was exempt because: (1) up to and including the transfer date, Roosevelt had used the property for commercial purposes; (2) after the transfer, West Belmont used the property for the commercial purpose of selling residential townhomes; and (3) West Belmont's activities fit the definition of industrial property because it used raw construction materials to make physical goods that were sold to the public.  

At the hearing, the Department relied on its Chicago Real Property Transfer Tax Ruling No. 2, promulgated December 23, 1998, and effective January 4, 1999, limiting the exemption to property used primarily for commercial or industrial use 
after
 the transfer. 

On May 31, 2001, the administrative hearing officer (AHO) affirmed the assessment of tax against West Belmont.  In her decision and order, the AHO found the property was not "used primarily for commercial or industrial purposes" up to and at the time of transfer as required by the exemption.  Based on the evidence, the AHO concluded the property either was vacant up to and at the time of transfer, or the property was the site of sales activity related to a planned residential real estate development up to and at the time of transfer.  In either case, West Belmont was not entitled to the exemption because real estate sales activity did not constitute a "commercial or industrial purpose" under the plain and ordinary meaning of those terms.  

The AHO did not discuss the Chicago Real Property Transfer Tax Ruling No. 2 in her decision.  She noted: "whether the enterprise-zone exemption also imposes a requirement of commercial or industrial use after transfer, it imposes such a requirement at the time of transfer.  Consequently, because, as will be seen, West Belmont fails the threshold requirement, its claim to the enterprise-zone exemption cannot prevail." 

On July 29, 2001, West Belmont filed a complaint for administrative review in the circuit court.  On November 20, 2002, the court affirmed the AHO's decision, finding: (1)the AHO did not err by relying on the sales contract as evidence; (2) the AHO followed the appropriate rules of statutory construction by limiting the exemption to property used for commercial purposes up to and at the time of transfer; (3) a conclusion that the property was not "used primarily for commercial purposes” was not against the manifest weight of the evidence; (4) West Belmont’s use of the property did not meet the plain definition of commercial purpose.  

West Belmont filed a motion for reconsideration or clarification.  The court denied the motion, holding it was not within the scope of the court’s review to determine the AHO’s meaning of "time of transfer.” 

DECISION

I. Standard of Review 

In reviewing a final decision under the Administrative Review Law (
735 ILCS 5/3-101 
et
 
seq.
 (West 2002)), we review the administrative decision and not the circuit court's judgment. 
Metropolitan Water Reclamation District of Greater Chicago v. Department of Revenue
, 313 Ill. App. 3d 469, 474, 729 N.E.2d 924 (2000).  Our review extends to all questions of fact and law presented in the record.  735 ILCS 5/3-110 (West 2002).  An administrative agency's findings and conclusions on questions of fact are deemed to be 
prima
 
facie
 true and correct.  735 ILCS 5/3-110 (West 2002). 

Here, the issue concerns the Department's interpretation of a municipal ordinance, a question of law we review 
de
 
novo
.  
Branson v. Department of Revenue
, 168 Ill. 2d 247, 254, 659 N.E.2d 961 (1995).  An agency's construction of a statute it is charged with administering is considered relevant, but not binding on the court.  
Branson
, 168 Ill. 2d at 254.  Nevertheless, we accord substantial weight and deference to an agency's interpretation because agencies are an informed source for ascertaining the legislature's intent.  
Metropolitan Water Reclamation District of Greater Chicago
, 313 Ill. App. 3d at 474-75.  

A taxpayer bears the burden of proving he is entitled to an exemption from a particular tax.  
Balmoral Racing Club, Inc. v. Topinka
, 334 Ill. App. 3d 454, 457, 778 N.E.2d 239 (2002).  Statutes exempting property from taxation are to be strictly construed in favor of taxation.  
Balmoral
, 334 Ill. App. 3d at 457-58. 

West Belmont challenges two aspects of the AHO's interpretation of the exemption: (1) holding the property must be in commercial or industrial use at the time of the transfer; and (2) excluding the sale of real property from the definition of "commercial purpose”.   

II. Time of Commercial Use

West Belmont contends the language of the statute is clear and unambiguous.  The word "used" in the phrase "used primarily for commercial or industrial purposes" can refer only to the historical use of the subject property as determined at the time of transfer.  In this case, West Belmont says it met the exemption's requirement because the property had been used by Roosevelt for commercial purposes before the transfer to West Belmont.  It contends the AHO's determination that the property must be in commercial or industrial use "at the time of transfer" would lead to absurd results, because any property that is vacant on the closing date would fail to qualify for the exemption.   

West Belmont also contends the Department's Real Property Transfer Tax Ruling No. 2 improperly amends and limits the exemption by ignoring past use of the property and focusing solely on future use.  There is no language in the ordinance prescribing how long the property must remain in commercial or industrial use; thus, the tax ruling's construction of the ordinance is arbitrary and unenforceable.     

In response, the Department contends the word "used" in the ordinance is ambiguous.  A statute is ambiguous if it is subject to two or more reasonable interpretations.  
People v. Donoho
, 204 Ill. 2d 159, 172, 788 N.E.2d 707 (2003).  Courts can consult interpretive aids when construing an ambiguous statute.  
Donoho
, 204 Ill. 2d at 172.  

The word "used" could refer either to past use of the property, use of property at the time of transfer, the "use" the transferee intends to make of the property, or a combination of some or all of the possible uses.  The Department contends the transferee intent to use definition more logically reflects the City Council’s intent.  Under section 3-33-140 of the Municipal Code, the Department has the authority to promulgate and enforce rules and regulations pertaining to the transfer tax.  Chicago Municipal Code §3-33-140 (1999).  The Department relies on its interpretation in Chicago Real Property Transfer Tax Ruling No. 2, which provides:     

"4. The limiting language "used primarily for commercial or industrial purposes" was added to chapters 3-33 and 16-12 on December 15, 1992, and became effective on March 1, 1993.  The purpose of this limiting language was to insure that exemptions of the transfer tax were allowed to only the following types of properties:

a. Property that was being used primarily for commercial or industrial purposes before the transfer, and continued to be used primarily for commercial or industrial purposes after the transfer.

b. Property that was not being used primarily for commercial or industrial purposes before the transfer, and was converted to use primarily for commercial or industrial purposes after the transfer."  Chicago Department of Revenue Real Property Transfer Tax Ruling No. 2, §4 (Jan. 4, 1999). 

The Department says its interpretation of the word "used” is consistent with other judicial interpretations of revenue provisions with similar language.  In 
Metropolitan
, 313 Ill. App. 3d at 475, the court denied an exemption under section 15-75 of the Illinois Property Tax Code, which provided: "[a]ll market houses, public squares and other public grounds owned by a municipal corporation and used exclusively for public purposes are exempt.”  35 ILCS 200/15-75 (West 1994).  The Metropolitan Water Reclamation District leased property to a private company, which used the land for an employee parking lot.  
Metropolitan
, 313 Ill. App. 3d at 472-73.  The court found the land lost its tax-exempt status because the private entity used the property post-lease for commercial and not public purposes.  
Metropolitan
, 313 Ill. App. 3d at 476-77.   

In 
Children’s Development Center, Inc. v. Olson
, 52 Ill. 2d 332, 334, 288 N.E.2d 388 (1972), the court construed section 19.2 of the Revenue Act of 1939, which exempted from taxation, "[a]ll property used exclusively for religious purposes, or used exclusively for school and religious purposes, or for orphanages and not leased or otherwise used with a view to profit.”  Ill. Rev. Stat. 1969, ch. 120, par. 500.2.  The court held it was "the primary use to which the property is devoted after the leasing which determines whether the tax-exempt status continues.”  
Children’s Development Center
, 52 Ill. 2d at 336.  See also 
First Presbyterian Church of Dixon v. Zehnder
, 306 Ill. App. 3d 1114, 1117, 715 N.E.2d 1209 (1999) (in construing section 19.2 of the Revenue Act of 1939, whether property is used with a view toward profit depends on the intent of the owner in using the property). 

We agree the language of the ordinance is ambiguous and find the Department's interpretation is reasonable.  We give substantial weight and deference to an agency's interpretation of an ambiguous ordinance based on the agency's experience and expertise.  
AFM Messenger Service, Inc. v. Department of Employment Security
, 198 Ill. 2d 380, 394, 763 N.E.2d 272 (2001). 
 The tax exemption clearly was not intended to reward past use of the property, because the buyer of the property, not the seller, pays the tax and receives the exemption.  The purpose of the exemption is to encourage commercial or industrial use of property located in an enterprise zone.  It looks to the post-transfer future, not to the past. 

West Belmont's proposed construction of the ordinance--that a property qualifies for the exemption if at one time it had been used for commercial or industrial purposes--would award a tax exemption to a buyer regardless of the use it intended to make of the property.  The buyer could avoid the tax even if the property remained vacant.  We do not believe the City Council intended such an absurd result.  
It is a court’s duty to construe statutes in a manner that avoids absurd or unjust results.  
People v. Hanna
, 207 Ill. 2d 486, 498, 800 N.E.2d 1201 (2003).  

The AHO found the property was not "'used primarily for commercial or industrial purposes’ up to and at the time of the transfer.”  We do not believe the statute is best served by focusing exclusively on the exact moment of transfer.  A buyer could intend to build and operate a commercial business on land that is still vacant or being used for non-commercial purposes on the day of the transfer.  
We take the AHO’s holding to be directed at the buyer’s stated purpose of future use made at the time of transfer, as well as the use of the property at the moment of transfer.  If the AHO intended to read intended use out of the exemption, she was in error.

In order to obtain an exemption, a buyer must file with the Department a real property transfer declaration describing the facts supporting the exemption and containing such supporting documentation as the Department shall reasonably require.  Chicago Municipal Code §3-33-070 (1999).
  We believe the exemption turns on the use the buyer intends to make of the property, as stated in its declaration.  This interpretation best serves the purposes of the exemption and the Enterprise Zone Act--to encourage economic growth and neighborhood revitalization.  See 20 ILCS 655/2 (West 2002). 

The Department's interpretation is not unworkable or unenforceable, as West Belmont contends.  The Department is capable of determining, based on a purchaser's declaration setting forth facts supporting the exemption, whether the purchaser intends to use the property primarily for commercial or industrial use.  The Department is also authorized to examine and investigate claimed exemptions to ensure compliance with the tax code.  Chicago Municipal Code §3-4-150(B)(1) (1999).  The question then becomes: Was West Belmont’s construction and sale of townhomes a "commercial purpose” under the ordinance?  If so, West Belmont should get its exemption.

III. "Commercial" or "Industrial" Use of Property

The AHO rejected West Belmont's argument that its activities constituted "commercial" use of the property, because the "plain and ordinary meaning of 'commercial purpose' does not encompass the sale or construction of townhouses, regardless of when those activities began."  The AHO relied on several dictionary definitions, all of which defined "commerce" as the exchange of goods, commodities, or personal property.  Two common threads in the definitions excluded West Belmont's activities: (1) the property involved in commerce is personal property, not real property; and (2) those involved in commerce are the producers, transporters, and traders of personal property, not the users of such property.     

West Belmont attacks the AHO's definition of "commercial purpose" as too restrictive, because it would exclude service-oriented or other businesses that are not primarily retail or wholesale-oriented.  It cites instead the following definitions from Black's Law Dictionary, which, according to West Belmont,  encompass the sale of real property:  

Commercial: "Relates to or is connected with trade and traffic or commerce in general; is occupied with business and commerce.  Generic term for most all aspects of buying and selling."

Commerce: "The exchange of goods, productions, or property of any kind; the buying, selling, and exchange of articles."

Commercial activity: "any type of business or activity which is carried on for profit."  Black's Law Dictionary 183-84 (6th Ed. 1991).    

West Belmont says the construction and sale of residential townhomes fit the definition of commercial use because it employed architects, construction personnel, and onsite sales personnel on the property from June, 1998, until completion.  

Rather than confining our analysis to dictionary definitions, we believe it is more appropriate to determine the intent of the City Council in light of the circumstances surrounding the enactment, as well as the need for it and the purpose it serves.  See 
People v. Woodard
, 175 Ill. 2d 435, 444, 677 N.E.2d 935 (1997).  

The Department says West Belmont did not use the land for a commercial purpose, according to the definition in the Chicago Real Property Transfer Tax Ruling No. 2, which provides:

"5. Property which is used primarily for commercial purposes is property used primarily for buying or selling of goods and services, or for otherwise providing goods and services, including any real estate used for hotel or motel purposes.  
See
 Cook County Real Estate Classification Ordinance; with Amendments Approved December 6, 1994, section 1(B)(9)."  Chicago Department of Revenue Real Property Transfer Tax Ruling No. 2, §5 (Jan. 4, 1999). 

We find West Belmont’s use of the property was not primarily "commercial” within the meaning of the exemption.  While the sale of real estate might be included in a general definition of commerce as the "exchange of property of any kind,” we do not believe West Belmont’s intended use of the land furthered the purpose of the exemption.  West Belmont did not intend to set up a real estate sales office from which it would continue to sell townhomes indefinitely.  It purchased the property to convert it into residential use.  Whatever "commerce” that might have been involved would come to an end when the homes were built and sold.  West Belmont would pack up and leave the property.  

West Belmont contends it sold "goods and services” within the meaning of the tax ruling because home-buyers bought personal property such as appliances and the service of customizing their homes.  We disagree.  Any sale of goods or services was subsidiary to West Belmont’s primary purpose of building and selling townhomes and was not included in the tax ruling’s definition.  

West Belmont contends its use of the property fulfills the stated goals of the Illinois Enterprise Zone Act: 

"The General Assembly finds and declares that the health, safety and welfare of the people of this State are dependent upon a healthy economy and vibrant communities; that the continual encouragement, development, growth and expansion of the private sector within the State requires a cooperative and continuous partnership between government and the private sector; and that there are certain depressed areas in this State that need the particular attention of government, business, labor and the citizens of Illinois to help attract private sector investment into these areas and directly aid the local community and its residents.  Therefore, it is declared to be the purpose of this Act to explore ways and means of stimulating business and industrial growth and retention in depressed areas and stimulating neighborhood revitalization of depressed areas of the State by means of relaxed government controls and tax incentives in those areas."  20 ILCS 655/2 (West 2002).

West Belmont says the Act is intended to stimulate residential development as well as economic development by providing incentives for the private sector to redevelop depressed areas.  That is, says West Belmont, replacing a vacant commercial building with a residential development serves the Act's purpose of "stimulating neighborhood revitalization."  West Belmont contends the trial court erred in finding the purpose of the Act is limited to economic development.

In response, the City contends the exemption is intended to subsidize only commercial and industrial projects, rather than  all forms of revitalization.  Using scarce enterprise zone property for residential purposes limits the availability of land for commercial and industrial use.  We agree with the City.

The Act is concerned with "business and industrial growth," and a residential real estate development would not serve that purpose.  We are not persuaded that West Belmont’s residence construction activities furthered the goals of the exemption. 
 

West Belmont contends the City tacitly approved of its use of the land by giving it a sales tax exemption on all construction materials that were to be permanently affixed to the property located in the enterprise zone, pursuant to section 16-12-070(a)(3)(A) of the Municipal Code.  Chicago Municipal Code §16-12-070(a)(3)(A) (1999).  This section of the enterprise zone ordinance does not exclude residential property.  

But unlike the transfer tax exemption, the building materials exemption is not confined to primarily commercial or industrial use of the property.  The building materials exemption is available for any type of property located in an enterprise zone.  The City’s grant of the sales tax exemption to West Belmont does not mean the transfer tax exemption is available for property used for residential real estate development.      

Alternatively, West Belmont contends its use of the property was industrial because it used raw construction materials to make finished physical goods that were sold to the public. 

The Chicago Real Property Transfer Tax Ruling No. 2 defines property used primarily for industrial purposes as:

"6. ***property used primarily in manufacturing, or in the extraction or processing of raw material unserviceable in their natural state to create new physical products or materials, or in the transportation or storage of raw materials or finished physical goods in the wholesale distribution of such materials or goods. *** Manufacturing means the material staging and production of goods used in procedures commonly regarded as manufacturing, processing, fabrication, or assembling which changes existing material into new shapes, new qualities, or new combinations."  Chicago Department of Revenue Real Property Transfer Tax Ruling No. 2, §6 (Jan. 4, 1999).

West Belmont was not engaged in manufacturing of goods, extraction, or processing of raw materials, or the wholesale distribution of raw materials or goods.  Definitions of the term "goods" include: "every species of personal property;" "[i]tems of merchandise, supplies, raw materials, or finished goods;" and "[a]ll things (including specially manufactured goods) which are moveable at the time of identification to the contract for sale."  Black's Law Dictionary 478 (6th Ed. 1991).  Residential townhouses are not considered "goods" within the ordinary meaning of the term. 

IV. Manifest Weight of the Evidence

West Belmont contends the AHO's reliance on the sales contract to determine the property was not being used commercially at the time of transfer was against the manifest weight of the evidence.  Whether Roosevelt was using the property for a commercial purpose at the time of transfer does not matter.  What matters is West Belmont’s use, then and, especially, later.  

West Belmont does not seriously contend it was using the property for construction and sale of townhomes on the day of transfer.  Since we hold as a matter of law that Roosevelt’s use of the property on the day of transfer is irrelevant, the dispositive issue is whether, at the time of purchase, West Belmont intended to use the property for a commercial purpose.  There are no fact issues to review.  Everyone agrees West Belmont was going to build and sell townhomes on the property.  Our agreement with the City that building and selling townhomes is not a "commercial purpose” as that term is used in the ordinance decides the case.  West Belmont is not entitled to the exemption.

CONCLUSION

We affirm the Decision and Order of the AHO.

Affirmed.

CAHILL, and GARCIA, JJ., concur.