SECOND DIVISION
October 30, 2007

No. 1-06-3229


METRO DEVELOPERS, LLC, an Illinois Limited       )   Appeal from the
Liability Company,                               )   Circuit Court of
                                                 )   Cook County
                    Plaintiff-Appellant,         )
                                                 )
v.                                               )   No. 05 L 51051
                                                 )
THE CITY OF CHICAGO DEPARTMENT OF                )
REVENUE and THE CITY OF CHICAGO                  )   Honorable
DEPARTMENT OF ADMINISTRATIVE HEARINGS,           )   Alexander P. White, Judge
                                                 )   Presiding.
                    Defendants-Appellees.        )


JUSTICE KARNEZIS delivered the opinion of the court:

Plaintiff, Metro Developers, LLC, appeals from an order of the circuit court on

administrative review upholding the determination by defendants, City of Chicago

Department of Revenue and City of Chicago Department of Administrative Hearings,

that plaintiff was not entitled to a property transfer tax exemption.  On appeal, plaintiff

contends that it was entitled to the exemption because it satisfied all the conditions

necessary to qualify for the exemption.  For the foregoing reasons, we affirm.

Chapter 3-33 of the Chicago Municipal Code (Code) imposes the Chicago real

property transfer tax (transfer tax) on "the privilege of transferring title to, or beneficial

interest in, real property located in the city." Chicago Municipal Code §3-33-030(A) (1999). The buyer of property must pay the tax, which is $3.75 per $500 of the transfer price of the property. Chicago Municipal Code §3-33-030(A) (1999). The Code provides for several exemptions, including "[t]ransfers of title to, or beneficial interest in, real property used primarily for commercial or industrial purposes located in an enterprise zone, as defined in Chapter 16-12 of this Code." Chicago Municipal Code § 3-33-060(L) (1999). An "enterprise zone" is a depressed area of the city that has been designated a "proposed enterprise zone" by the city council and approved and certified by the proper state or federal authorities as an enterprise zone. Chicago Municipal Code §16-12-020 (1999).

In December 1998, the Chicago department of revenue issued Revenue Ruling No. 2, effective January 4, 1999, which clarified that the exemption was only intended to apply to property that "was being used primarily for commercial or industrial purposes before the transfer, and continued to be used primarily for commercial or industrial purposes after the transfer."

On June 29, 1999, plaintiff paid $5.9 million for real property located at 1500 West Monroe Street in Chicago. Plaintiff purchased the property from AP& P Manufacturing, Inc., which manufactured and distributed paper products at that location. The sales contract provided that plaintiff would lease the property to AP & P for a period of 9 months after the sale was completed. Plaintiff filed a Chicago real property transfer tax declaration form, claiming an exemption because the property was

used primarily for commercial or industrial purposes and it was located in an enterprise zone, pursuant to section 3-33-060(L) of the Code.[1] AP & P did lease the property from plaintiff after the sale, but due to an intervening bankruptcy, AP& P had to be evicted from the property approximately 11 months later, on June 9, 2000.

Although the property was zoned only for commercial usage, plaintiff purchased the property intending to obtain a zoning classification change and to convert the building located on the property into residential condominiums. Pursuant to plaintiff's lease with AP & P, plaintiff reserved the right to use an area of less than 5% of the property for a sales and marketing office for the future condominium development. On August 13, 1999, plaintiff applied for a permit to construct a sales office, and on December 10, 1999, plaintiff applied for a demolition permit. Plaintiff's application for a zoning classification change and business plan development was approved on June 27, 2000. On March 14, 2001, plaintiff was issued a permit to convert the existing building to residential condominiums. The property was developed into 175 residential condominiums, and on November 6, 2001, plaintiff sold its first condominium.

On August 27, 2004, the department of revenue issued plaintiff a notice of tax determination and assessment in the amount of $86,142.93. The sum included amounts for $44,250 tax due, $28,617.93 interest due, $2,212.50 late penalty and

---

[1] The record is clear and the parties agree that the property is located within an enterprise zone.

3

$11,062.50 negligence/wilfulness penalty. Plaintiff protested the tax, claiming that it was exempt from the tax because the property was located in an enterprise zone and, because of the lease agreement with AP & P, the property was used primarily for commercial or industrial purposes both before and immediately after the sale.

After a hearing, the department of administrative hearings (Department) upheld the assessment because "there is no question, based on the stipulated facts, that [plaintiff] purchased this property intending to develop it into condominium residences." Plaintiff filed an appeal in the circuit court and the circuit court affirmed the judgment of the Department. Plaintiff now appeals.

Our standard of review for reviewing an administrative agency's decision is governed by the Administrative Review Law. 735 ILCS 5/3-101 *et seq.* (West 1996). "[It] provides that our review extends to all questions of law and fact presented by the entire record." Abrahamson v. Illinois Department of Professional Regulation, 153 Ill. 2d 76, 88 (1992). Our role as an appellate court is to review the administrative decision, not the circuit court decision. Denton v. Civil Service Comm'n, 277 Ill. App. 3d 770, 773 (1996). If the record contains evidence supporting the agency's decision, it should be affirmed. Abrahamson, 153 Ill. 2d at 88. We review the Department's interpretation of a municipal ordinance *de novo*. Branson v. Department of Revenue, 168 Ill. 2d 247, 254 (1995).

We note that a taxpayer bears the burden of proving he is entitled to an exemption. Balmoral Racing Club, Inc. v. Topinka, 334 Ill. App. 3d 454, 457 (2002).

4

Statutes exempting property from taxation are to be strictly construed in favor of taxation. Balmoral, 334 Ill. App. 3d at 457-58.

On appeal, plaintiff contends that it is exempt from paying the tax because it satisfied all the conditions necessary in the ordinance to qualify for the exemption. Specifically, plaintiff maintains that it obtained a transfer of title to the property, the property was used primarily for commercial or industrial purposes before and for 11 months after the transfer, and the property was located in an enterprise zone.

We look to this court's opinion in West Belmont, L.L.C. v. City of Chicago, 349 Ill. App. 3d 46 (2004), for guidance. In West Belmont, the plaintiff, a developer, bought property that had been occupied by a furniture retailer, wholesaler and rental company. The developer immediately demolished the building on the property and began constructing and selling residential townhouses on the property. The developer sought an exemption from the transfer tax, claiming that it purchased real property used primarily for commercial purposes located in an enterprise zone. This court found on appeal that the developer was not entitled to the exemption because the property was no longer used for commercial or industrial purposes. West Belmont, 349 Ill. App. 3d at 51. The court determined that the word "used" in the ordinance was ambiguous because it could refer either to past use of the property, use of the property at the time of transfer, or the use the transferee intended to make of the property. West Belmont, 349 Ill. App. 3d at 50. Therefore, the court looked to the intent of the ordinance, which it noted was to encourage commercial or industrial use of property located in an

enterprise zone. The court determined that because the buyer of the property pays the transfer tax or receives the exemption, the exemption was not intended to reward past use of the property. West Belmont, 349 Ill. App. 3d at 51. Therefore, the court held that a determination of whether the exemption applies depends upon the future use of the property. West Belmont, 349 Ill. App. 3d at 51.

Applying the principles set forth in West Belmont to the facts in this case, we find that whether the exemption applies depends upon plaintiff's intended future use of the property. Plaintiff admitted that its intent for purchasing the property was to construct residential condominiums. Plaintiff's actions subsequent to the purchase were clearly consistent with this intent. Plaintiff constructed a sales office on the property shortly after the sale, applied for a zoning classification change, applied for demolition and construction permits and ultimately constructed and sold residential condominiums on the property. Therefore, we find that plaintiff was not exempt from the transfer tax because plaintiff intended to build residential condominiums on the property and subsequently did so.

Plaintiff maintains that because it leased the property to AP & P, which continued its commercial activity for nearly 11 months subsequent to the sale, it satisfied all the conditions necessary to qualify for the exemption. Plaintiff notes that neither the ordinance nor Revenue Ruling No. 2 contains a time frame in which the property must continue to be used for commercial or industrial purposes.

We do not find the lack of a specific time frame that the property must continue

6

to be used for commercial or industrial purposes to be problematic.  As stated above, we look to the buyer's intended and future use of the property.  Plaintiff's intended use of the property was always to construct residential condominiums and plaintiff successfully did so.  Merely because the property was used for commercial purposes for a brief period of time after the sale cannot negate plaintiff's intent to build the condominiums and the fact that the condominiums were actually constructed on the property.

Plaintiff further maintains that it was entitled to the exemption because there was no guarantee that when plaintiff purchased the property it would receive the necessary zoning classification change and permits to construct the condominiums.  However, plaintiff's theory ignores the facts of this case that plaintiff's intended use was to build residential condominiums and plaintiff actually did build the condominiums.  As stated in West Belmont, the exemption depends upon the future use of the property, and here, the future use of the property was for residential purposes.

Accordingly, we affirm the judgment of the circuit court and the Department.

Affirmed.

THEIS, J., and CUNNINGHAM, J., concur.