SIXTH DIVISION

July 19, 2002

No. 1--00--3294

U.S.G. ITALIAN MARKETCAFFE, L.L.C., ) Appeal from the

doing business as Soprafina, and ) Circuit Court of

THOMAS M. TUNNEY ENTERPRISES, LTD.,   ) Cook County.

doing business as Ann Sather Restaurants,)

 )

Plaintiffs-Appellees, )

 )

v. ) No. 00 L 050208

 )

THE CITY OF CHICAGO and HUGH MURPPHY, )

in his capacity as the Director of )

Revenue of the City of Chicago, ) The Honorable

 ) Thomas P. Quinn.

Defendants-Appellants. ) Presiding Judge.

JUSTICE BUCKLEY delivered the opinion of the court:

Two restaurant owners, U.S.G. Italian Marketcaffe, L.L.C., d/b/a Soprafina, and Thomas M. Tunney Enterprises, Ltd., d/b/a/ Ann Sather Restaurants (the Restaurants), brought this action against the City of Chicago and Hugh Murphy, director of revenue of the City of Chicago (collectively, the City), claiming that the City's  litter  tax  ordinance  (the Ordinance) (Chicago  Municipal  Code 

§§3-43-010 to 3-43-100 (2000)) violates state law and the uniform tax classification clause of the Illinois Constitution (Ill. Const. 1970, art. IX, §2), and is unconstitutionally vague.  The trial court entered summary judgment in favor of the Restau-rants and declared the Ordinance unlawful.  The City now appeals.

I.  STATEMENT OF FACTS

On November 17, 1999, the City enacted the Ordinance which created the litter tax (now see Chicago Municipal Code §§3-43-010 to 3-43-100 (2000)) and the City's revenue director promulgated regulations implementing that Ordinance (now see Chicago Tax Regu-lations §§3-43-010 to 3-43-070 (2000)).

The implementation of this tax was prompted by the City council's concern that "[c]arry-out food *** is a substantial source of litter in the City, with a resulting cost to the City and its residents, [both] monetary *** and *** social" (Chicago City Council, 
Journal of Proceedings
, November 17, 1999, at 17490), and its desire to raise revenue to combat the problem.

The Ordinance imposes a tax on the sale at retail of food prepared for immediate consumption by a place for eating.  Chicago Municipal Code §3-43-020 (2000).  A "[p]lace for eating" is defined as "any restaurant, cafeteria or other business engaged in the sale of food at retail, where the business provides for on-premises consumption of the food it sells."  Chicago Municipal Code §3-43-010(A)(5) (2000).  The tax is imposed at a rate of 0.5% of the selling price of the food.  Chicago Municipal Ordinance §3-43-020 (2000).

Under the Ordinance, certain retail sales of food are exempt.  The primary exemption is for food that is not "carry-out food" and is sold for consumption at the place for eating.  Chicago Municipal Code §3-43-030(A) (2000).  "Carry-out food" is defined by the ordinance as "food that is wrapped or enclosed in a disposable paper, plastic, metal or other disposable container which permits the purchaser or patron to carry out and consume the food at a location away from the retailer's establishment, whether or not the purchaser or patron in fact carries out and consumes the food at a location away from the retailer's establishment."  Chicago Munici-pal Code §3-43-010(A)(1) (2000).  The definition further provides that such determination is made at the time the food is tendered to the patron and does not apply to "leftovers" which are subsequently transferred to a disposable container and removed from the premises.  Chicago Municipal Code §3-43-010(A)(1)(a) (2000).  The definition further exempts food that "is delivered by the retailer to the purchaser's residence, office or other designated building."  Chicago Municipal Code §3-43-010(A)(1)(b) (2000).  In addition, the tax does not apply to businesses that serve only carry-out food, 
i.e.
, a business without facilities for on-premises consumption.

A business is not subject to the litter tax for any tax year in which its liability for the tax would not be more than $200.  Chicago Municipal Code §3-43-040 (2000).  And a safe-harbor rule allows a business that sells both food that is subject to the tax and food that is not subject to it to satisfy its tax obligation by paying tax on at least 50% of its revenue from all retail sales, without calculating the tax as a percentage of its taxable sales.  Chicago Tax Regulations §3-43-070 (2000).  Also, where a place for eating is inside a larger facility--such as a food court within a shopping mall or a place for eating within a grocery store--the tax applies to the place for eating, and not to the larger facility, if the place for eating is physically separated from, and its record-keeping system accounts for sales separately from, the rest of the facility.  Chicago Tax Regulations §3-43-050 (2000).

The Restaurants filed a two-count complaint on March 7, 2000, claiming that the Ordinance violates section 8-11-6a of the Illinois Municipal Code (65 ILCS 5/8-11-6a (West 1998)) and the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, §2).  That same day, the Restaurants requested a temporary restraining order, and the circuit court denied the request.  On March 31, 2000, the Restaurants filed a motion for summary judgment based on both of the claims presented in their complaint as well as the additional claim that the Ordinance is unconstitutionally vague.  On April 7, 2000, the City filed its answer, and on July 7, 2000, it filed a cross-motion for summary judgment.  In a decision issued on September 12, 2000, the circuit court granted summary judgment in favor of the Restaurants and against the City on all three claims.  In its decision, the court declared the Ordinance invalid and enjoined the City from collecting the tax.

On September 18, 2000, the City filed a motion in the circuit court seeking a stay pending appeal.  The court denied that motion on September 22, 2000.  On October 2, 2000, the City filed its notice of appeal challenging the circuit court's judgment.  On that same day, the City filed a motion in this court seeking a stay pending appeal, which we granted on October 13, 2000.

II.  DISCUSSION

A.  Standard of Review

The standard of review applicable to an order granting or denying summary judgment is 
de  novo
.  See 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
 154 Ill. 2d 90, 102 (1992).  Simi-larly, a circuit court decision relating to the constitutionality of a statute is also reviewed 
de  novo
.  
Russell v. Department of Natural Resources
, 183 Ill. 2d 434, 441 (1998).

B.  Violation of Illinois Law

The trial court held that the Ordinance violates section 8-11-6a of the Illinois Municipal Code.  Section 8-11-6a provides that, with certain exceptions that do not apply to this case, "no home rule municipality has the authority to impose, pursuant to its home rule authority, [any] tax on the *** sale *** of tangible personal property based on *** the selling *** price of said tangible personal property."  65 ILCS 5/8-11-6a (West 1998).  On appeal, the City contends that the court's holding ignores the plain language of section 8-11-6a because it prohibits only taxes that a home rule municipality imposes "
pursuant  to its home rule authority
" (emphasis added) (65 ILCS 5/8-11-6a (West 1998)), 
i.e.
, pursuant to the authority that the Illinois Constitution confers directly on the municipalities it defines as home rule municipalities.
(footnote: 1)  The City asserts that it did not enact the Ordinance pursuant to its home rule authority to tax; it contends that it enacted the Ordinance pursuant to the 
statutory authority
 of section 11-42-5 of the Illinois Municipal Code (65 ILCS 5/11-42-5 (West 199_).  Section 11-42-5 provides:  "The corporate authorities of each municipality may *** license, tax, and regulate all places for eating ***."  65 ILCS 5/11-42-5 (West 1998).  Thus, according to the City, section 8-11-6a is inapplicable.

In response, the Restaurants contend that section 11-42-5 does not apply because, contrary to the City's assertion, the Ordinance does not impose a general tax upon "places for eating"; instead, it imposes a tax upon "the sale at retail" of food "prepared for imme-diate consumption" and actually exempts most "places for eating" from taxation.  The Restaurants further contend that section 8-11-6a bars the present Ordinance because although the section permits municipalities to impose a tax upon food sold for immediate consumption that is consumed at the place where it is sold, it does not authorize a tax upon carry-out food that is consumed off the premises of a business.
(footnote: 2)
 The first step in resolving this issue requires the court to determine whether the Ordinance imposes a tax upon "places for eating" or whether it imposes a tax upon the sale of food, 
i.e.
, tangible personal property.

The Restaurants argue that the Ordinance imposes a sales tax  rather than a tax on places for eating because it is a tax on the sale of tangible personal property and, therefore, is not autho-rized under section 11-42-5.  In support, they cite 
Springfield Hotel-Motel Ass'n v. City of Springfield
, 119 Ill. App. 3d 753 (1983).  At issue in Springfield was whether the tax upon the rental of a hotel room was a tax upon an occupation.  The court found that it was not.  The court held that it was a tax upon the use of tangible personal property.  
Springfield
, 119 Ill. App. 3d at 760.  

The City contends that the 
Springfield
 case is irrelevant.  It argues that when the incidence of the tax is placed on the sellers of a commodity rather than its purchasers, the tax is considered an occupation tax on those sellers even if the revenue that the tax generates is some measure of the sales of the commodity.  In support, the City cites the following:  
Central Television Service, Inc. v. Isaacs
, 27 Ill. 2d 420, 426 (1963) (a tax enacted pursuant to the Retailers Occupation Tax Act "is not a tax on the privilege of buying [a commodity], or upon the individual sale [of the commodity]--it is a tax upon the occupation of selling [the commodity] at retail" (emphasis omitted); 
Mahon v. Nudelman
, 377 Ill. 331, 334-35 (1941) (a tax enacted pursuant to the Retailers Occupation Tax Act "is on the occupation and not on the sale, though sales are utilized as a measure of the tax to be assessed"); 
Mel-Park Drugs, Inc. v. Department of Revenue
, 218 Ill. App. 3d 203, 213 (1991) (same).  The City argues that the tax here is imposed on the place for eating, while the sale of food for immediate consumption--or rather a portion of such sales--is merely the measure of the tax and, therefore, the tax is an occupation tax.

We agree with the City.  Section 11-42-5 unambiguously autho-rizes every municipality in the state, home rule and nonhome rule, to tax places for eating.  Because the Ordinance, which taxes places for eating, was enacted pursuant to the statutory authority of section 11-42-5, it does not violate section 8-11-6a of the Illinois Municipal Code.

C.  Violation of the Uniformity Clause

The uniformity clause provides:

"In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and subjects and objects within each class shall be taxed uniformly.  Exemptions, deductions, credits, refunds and other allowances shall be reasona-ble."  Ill. Const. art. IX, §2.

A tax or fee complies with the uniformity clause as longs as its classification satisfies two requirements--it is "based on a real and substantial difference between those persons assessed and those who are not," and it "bear[s] some reasonable relationship to the object of the legislation or to public policy."  
Northern Illinois Home Builders Ass'n v. County of Du Page
, 165 Ill. 2d 25, 44-45 (1995).  The trial court held that the Ordinance failed to comply with these requirements.

Our court recently addressed a uniformity challenge to the Tobacco Products Act of 1995 (135 ILCS 143/10-1 
et  seq.
 (West 1998))
.  See 
Arangold Corp. v. Zehnder
, 329 Ill. App. 3d 781 (2002).  In so doing, the court noted the follow-ing:

"[T]he uniformity clause 'was not made to duplicate the limitation on the taxing power contained in the equal protection clause.' [Citation.]  Rather, 'the uniformity clause was meant to insure that taxpayers  *** receive added protection in the state consti-tution based on standards of reasonableness which are more rigorous than those developed under the federal constitution.' [Citation.]" 
Arangold
, 329 Ill. App. 3d at 796.

The court further noted: 

"The 'more rigorous' standard *** is actually a burden-shifting arrangement under which a party bringing a uniformity clause challenge need not negate every conceivable basis that might support the tax.  [Citation.]  Instead, a good-faith challenge to a tax classification requires the taxing body to justify the classification.  [Citation.]  The challenger must then 'persuade the court that the taxing body's justification is unsupported by the facts or insufficient as a matter of law.' [Citation.]  If the former, the challen-ger must 'present a factual basis negating the asserted justification.' [Citation.]" 
Aran-gold
, 329 Ill. App. 3d at 796.

If the challenger cannot meet its burden, judgment is proper as a matter of law.  
Geja's Cafe v. Metropolitan Pier & Exposition Authority
, 153 Ill. 2d 239, 248-49 (1992).  With these principles in mind, we now turn to the parties' arguments.

The City imposes its litter tax on businesses having facilities for on-premises food consumption but not on businesses lacking such facilities.  The Restaurants argue that because the tax is imposed on some sellers of a commodity but not on other sellers of the exact same commodity, it does not satisfy the "real and substantial" difference requirement.

The Restaurants contend that when the sales of identical products are placed in different tax classifications, the tax law is unconstitutional and rely on 
North Sheffield, Inc. v. City of Chicago
, 144 Ill. App. 3d 913 (1986), and 
Satellink of Chicago, Inc. v. City of Chicago
, 168 Ill. App. 3d 689 (1988), in support.  Both cases support the proposition that there must be a "real and substantial" difference between those persons taxed and those exempt from tax.  However, according to the City, the actual com-modity that the businesses sell is immaterial to the first prong of the test.  Rather, it contends we should determine whether there is a real and substantial difference between businesses selling the same commodity.  

We do not quarrel with the City's argument that the differ-ences between an eating establishment with seating and an esta-blishment that sells food but lacks facilities for on-premises consumption is plain.  However, the reasons set forth by the City for taxing the former but not the latter are simply implausible.  The Ordinance must meet both prongs of the uniformity test to pass constitutional muster.  Under the second prong, the classification must "bear some reasonable relationship to the object of the legislation or to public policy."  
Northern Illinois Home Builders Ass'n v. County of Du Page
, 165 Ill. 2d 25, 44-45 (1995).  The Ordinance at bar fails to meet the second prong.  

The City cites 
Geja's Cafe v. Metropolitan Pier & Exposition Authority
, 153 Ill. 2d 239 (1992), to support its argument that "the relationship between the litter-reducing purpose of the City's ordinance and the classification of the tax is easily close enough to satisfy the second requirement of the unity test."  We find that 
Geja's Cafe
 compels a different conclusion.

In 
Geja's Cafe
, plaintiffs challenged a tax imposed on two types of food and beverage.  The tax was imposed on "all sales of food and beverages to be consumed on the premises where sold."  
Geja's Cafe
, 153 Ill. 2d at 246.  The tax was also imposed on "sales of food and beverages sold for consumption off the premises when sold by *** restaurant[s] or full service bar[s]," which were defined as "retailers whose principal source of gross receipts is from the sale of food and beverages prepared for immediate consumption."  
Geja's Cafe
, 153 Ill. 2d at 246.  The purpose of the tax was to fund bonds issued to finance the improvement and expansion of McCormick Place.  
Geja's Cafe
, 153 Ill. 2d at 246.  The tax was imposed on businesses located within three designated geographic areas in Cook County (which would directly benefit from the McCormick Place expansion project) but not on businesses located elsewhere in the county.  See 
Geja's Cafe
, 153 Ill. 2d at 246.  

Plaintiffs argued that the tax violated the uniformity clause because "it is imposed on the sale of carry-out food purchased at restaurants, which are defined as businesses that derive the majority of their gross receipts from the sale of food and beverages for on-premises consumption, while excluding the sale of the very same carry-out food from places such as grocery stores."  
Geja's Cafe
, 153 Ill. 2d at 252-53.  The supreme court disagreed; it stated:

"[T]he Authority has offered an entirely plausible reason for this distinction, and again, plaintiffs fail to rebut it.  The classification targets the types of food service establishments likely to benefit from increased convention trade and the types of food purchases likely to be made by conven-tioneers.  Nonresident trade show attendees, staying in hotels, depend on full service res-taurants for their meals.  It is fair to pre-sume that they do not cook meals in their rooms.  Accordingly, the tax focuses on the types of establishments that receive the bulk of the convention trade, namely, full service bars and restaurants.  Businesses that do not receive the majority of their revenue from the sale of food and beverages for on-premises consumption, for instance grocery stores, are not likely to see an appreciable increase in the business as a result of the project.  Simply put, out-of-town visitors are highly unlikely to buy a substantial amount of gro-ceries while staying in Chicago.  Once again, there is a real and substantial difference between those taxed and not taxed, which bears a reasonable relation to the legislation."  
Geja's Cafe
, 153 Ill. 2d at 253.

The City contends that the purpose of the Ordinance includes not only the cleanup of litter, but also the reduction of the amount of litter generated in the first place.  Thus, it asserts that it is reasonable to impose a tax on the sale of carry-out food by businesses with facilities for on-premises consumption to encourage on-premises consumption.  It argues that some businesses will discontinue serving customers in carry-out containers making it difficult for customers to take the food off the premises.  It further argues that some businesses may raise the price of food served in carry-out containers in order to reduce their tax lia-bility thereby encouraging customers to eat on the premises.  

With respect to the exemption of carry-out-only facilities from taxation, the City argues that taxing carry-out-only facilities would not likely reduce the amount of litter because the tax could not influence the manner in which those businesses sell food and their customers have no choice but to take the food else-where.  The City also relies on considerations of administrative convenience to support the exemption of carry-out-only businesses.  It argues that such businesses do not sell enough food to generate sufficient tax revenue to justify the costs the City would incur trying to collect the tax from them.

The City's explanation for the fact that the Ordinance does not apply to food sold by carry-out-only businesses but does apply to food sold for on-premises consumption is insufficient as a matter of law for purposes of satisfying the uniformity clause.  The stated purpose cannot be met when the Ordinance taxes items that are not likely to cause litter, while not taxing items that are very likely to cause litter.  Moreover, we can find nothing in the record to support the stated purpose of the Ordinance.  There is nothing in the record showing who generates litter.  The City relies on the affidavit of Craig M. Lesner, assistant budget director for the city of Chicago, to support its position that it would be administratively unnecessary to tax carry-out facilities without tables due to low volume revenue.  However, low volume revenue does not necessarily translate into low volume litter.  Indeed, an item costing 50 cents may be wrapped in more litter-generating paper than an item costing $10.  It is common sense that the most likely generator of litter would be a carry-out-only facility that does not provide seating.  In addition, the Ordinance may also have the effect of encouraging litter.  A carry-out-only facility may be discouraged by the Ordinance from providing seating and serving food on plates because once it does so it may incur a tax.

We agree with the Restaurants and find that the classifica-tions created by the Ordinance are not reasonably related to its legislative purpose of raising revenue in order to remove and dispose of litter caused by patrons of places for eating which sell carry-out food, nor is it reasonably related to the City's stated purpose of reducing the amount of litter generated.   

D.  Vagueness

The trial court's third reason for invalidating the Ordinance is that it is unconstitutionally vague and confusing.

A law is unconstitutionally vague and, therefore, violative of due process when it lacks " 'terms susceptible of objective measurement' " (
Keyishian v. Board of Regents of the University of the State of New York
, 385 U.S. 589, 604, 17 L. Ed. 2d 629, 641, 87 S. Ct. 675, 684 (1967), quoting 
Cramp v. Board of Public Instruc-tion
, 368 U.S. 278, 286, 7 L. Ed. 2d 285, 291, 82 S. Ct. 275, 280 (1961)) and when persons of " 'common intelligence must neces-sarily guess at its meaning and differ as to its application' " (
Keyishian
, 385 U.S. at 604, 17 L. Ed. 2d at 641, 87 S. Ct. at 684, quoting 
Baggett v. Bullitt
, 377 U.S. 360, 367, 12 L. Ed. 2d 377, 382, 84 S. Ct. 1316, 1320 (1964)).

The Restaurants contend that the regulations show that because of the complexity and uncertainty of the language of the Ordinance, the Ordinance is subject to varied interpretations.   For example, the Ordinance applies to sales of food that are "primarily" carry out.  Chicago Municipal Code §3-43-030 (2000).  The regulations provide the following guidance:

"A meal or other order consists 'primarily' of food that is not carry-out food in either of the two situations:

(1) more than fifty per cent of the items making up the meal or other order consist of food that is not carry-out food or 

(2) more than fifty per cent of the selling price of the meal or other order is attributable to food that is not carry-out food."  Chicago Tax Regulations §3-43-030 (2000).

The following examples are provided: 

"(a) In a cafeteria, a customer is served a hamburger and french fries on china plates, but a side order of coleslaw is enclosed in a disposable cup.  The exemption [from taxation] applies because the food makes up a meal that consists primarily of food that is not carry-out food, and it is sold for consumption at the place for eating.

(b) In a cafeteria, a customer is served a hamburger and french fries wrapped in disposable materials, but a cup of coffee is served in a china cup.  The exemption [from taxation] does not apply because the food makes up a meal that consists primarily of food that is carry-out food."  Chicago Tax Regulations §3-43-030 (2000).

The Restaurants argue that the above examples illustrate how the same product with the same packaging sold at the same restau-rant may be taxed differently and how every individual sale must be studied by the server or cashier in order to determine whether the Ordinance applies.  The Restaurants cite other examples from the regulations.  For instance, a whole pizza served in a cardboard box is not subject to the tax, while a slice of pizza served in a card-board box is taxed.  Chicago Tax Regulations §3-43-020 (2000). 

We agree with the Restaurants and find that the Ordinance is unconstitutionally vague. 

III.  CONCLUSION

Based on the above we hereby affirm the trial court's order granting summary judgment in favor of the Restaurants. 

Affirmed.

Gallagher, P.J., and O'Brien, J., concur.

FOOTNOTES
1:  Cook County derives its home rule authority from article 

VII of the Illinois Constitution of 1970.  Article VII provides:

 

"Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt."  Ill. Const. 1970, art. VII, §6(a). 

2:  The statute provides a number of exceptions to its gen-eral prohibition on certain taxes, including a "tax on food pre-pared for immediate consumption *** sold by a business which pro-vides for on-premises consumption of said food."  65 ILCS 5/8-11-6a(6) (West 1998).