2019 IL App (1st) 181502
Opinion filed: June 21, 2019

FIRST DISTRICT
Fifth Division

No. 1-18-1502

| | | |
|---|---|---|
| PETERSON PLAZA PRESERVATION, L.P.; | ) | Appeal from the |
| RELATED BLOOMINGDALE, L.L.C.; | ) | Circuit Court of |
| MARSHALL FIELD PRESERVATION, L.P.; | ) | Cook County. |
| RELATED VAN BUREN, L.L.C., | ) | |
| | ) | 2017 L 050922 |
| Plaintiffs-Appellants, | ) | 2017 L 05092 |
| | ) | 2017 L 050924 |
| v. | ) | 2017 L 050925, cons. |
| | ) | |
| THE CITY OF CHICAGO DEPARTMENT OF | ) | Honorable |
| FINANCE and THE CITY OF CHICAGO | ) | Carl Anthony Walker, |
| DEPARTMENT OF ADMINISTRATIVE | ) | Judge, presiding. |
| HEARINGS, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Justices Hoffman and Hall concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiffs, Peterson Plaza Preservation, L.P. (Peterson Plaza), Related Bloomingdale, L.L.C. (Bloomingdale), Marshall Field Preservation, L.P. (Marshall Field), and Related Van Buren, L.L.C. (Van Buren), appeal from an order of the circuit court on administrative review upholding the determination of defendants, City of Chicago Department of Finance and City of Chicago Department of Administrative Hearings, that plaintiffs were not entitled to real property transfer tax exemptions under section 3-33-060(L) of the Chicago Municipal Code (Chicago Municipal Code § 3-33-060(L) (amended May 8, 2013)) for the transfer of title to certain federally funded residential apartment buildings inside of enterprise zones. On appeal, plaintiffs argue that they were entitled to the exemptions because they satisfied all the conditions necessary to qualify therefor. We affirm.

¶ 2                                 I. Relevant Law

¶ 3     Chapter 3-33 of the Chicago Municipal Code (Municipal Code) imposes the Chicago real property transfer tax (transfer tax) on "the privilege of transferring title to, or beneficial interest in, real property located in the city." Chicago Municipal Code § 3-33-030(A) (amended Nov. 11, 2011). The buyer of the property must pay the tax, which is $3.75 per $500 of the transfer price of the property. *Id.* The Municipal Code provides an exemption for "[t]ransfers of title to, or beneficial interest in, real property used primarily for commercial or industrial purposes located in an enterprise zone, as defined in Chapter 16-12 of this Code." Chicago Municipal Code § 3-33-060(L) (amended May 8, 2013). An enterprise zone is a depressed area of the city that has been designated a "proposed enterprise zone" by the city council and approved and certified by the proper state or federal authorities as an enterprise zone. Chicago Municipal Code § 16-12-020 (amended Nov. 26, 2013).

¶ 4     In December 1998, the Chicago Department of Revenue issued Real Property Transfer Tax Ruling No. 2, section 5 and section 7, effective January 4, 1999,[1] which defines when a property is used primarily for commercial purposes in an enterprise zone so as to qualify for a tax exemption under section 3-33-060(L) of the Municipal Code:

> "Section 5. Property which is used primarily for commercial purposes is property used primarily for buying or selling of goods and services, or for otherwise providing goods and services, including any real estate used for hotel or motel purposes. [Citation.]"

>        ***

---

[1] Tax Ruling No. 2 was subsequently amended, effective June 1, 2004.

Section 7. For property to be 'primarily used for commercial or industrial purposes,' more than 50 percent of the property must be used for either commercial or industrial purposes." Chicago Department of Revenue Real Property Transfer Tax Ruling No. 2, §§ 5, 7 (eff. June 1, 2004), https://www.chicago.gov/content/dam/city/depts/rev/supp_info/TaxRulingsandRegulations/RPTTRuling2.pdf [https://perma.cc/ZTU5-6RKU] (hereinafter Tax Ruling No. 2).

¶ 5                                    II. Background Facts

¶ 6        Plaintiffs each purchased a property in a Chicago enterprise zone with the intent to continue operating it as affordable housing under section 8 of the United States Housing Act of 1937 (42 U.S.C. § 1437f (2012)) (hereinafter Section 8 program). Under the Section 8 program, tenants pay no more than 30% of their income toward rent; the United States Department of Housing and Urban Development (HUD) compensates the developer for the remaining balance. See *id.* §§ 1437a(a), 1437f(c). Following their acquisition of the properties, plaintiffs each paid thousands of dollars in transfer taxes.

¶ 7        Specifically, with respect to each individual plaintiff: Peterson Plaza purchased a federally funded housing complex consisting of 189 units located at 5969 North Ravenswood Avenue in Chicago, for which it paid $161,250 in transfer taxes; Bloomingdale purchased a 111-unit complex located at 1755 North Keystone Avenue, for which it paid $52,500 in transfer taxes; Marshall Field purchased a 628-unit complex located at 1448 North Sedgwick Street, for which it paid $648,750 in transfer taxes; and Van Buren purchased a 299-unit complex located at 2045 West Jackson Boulevard, for which it paid $135,750 in transfer taxes.

¶ 8    After each of the acquisitions, plaintiffs continued to rent units in the properties to qualifying tenants under the Section 8 program. Between 87% and 100% of each of the properties was used for tenant living space. Plaintiffs performed extensive renovations at each of the properties, employed management and maintenance staff at each of the properties, and offered various services to the tenants such as general equivalency diploma (GED) classes, literacy programs, health screenings, and job training. All of the services are free to the tenants and are not available to the general public.

¶ 9    On November 12, 2015, plaintiffs filed with the Department of Finance (Department) claims for refunds of the transfer taxes based on the exemption in Municipal Code section 3-33-060(L) for transfers of title to real property used primarily for commercial purposes in an enterprise zone. On November 20, 2015, the Department denied all four refund claims because it determined that the properties were not being used for commercial purposes within the enterprise zones.

¶ 10    On December 28, 2015, plaintiffs filed petitions with the Department protesting the denial of their refunds and requesting administrative hearings thereon. The parties submitted cross-motions for summary judgment, and hearings were held on the motions before an administrative law judge (ALJ). On September 20, 2017, the ALJ issued decisions granting summary judgment in favor of the Department in all four cases, upholding the denial of plaintiffs' refunds based on their failure to qualify for the transfer tax exemption.

¶ 11    Plaintiffs filed complaints for administrative review in the circuit court. On the Department's motion, the court consolidated the cases. On June 14, 2018, the circuit court confirmed the administrative decisions, again upholding the denial of plaintiffs' refunds. Plaintiffs filed this timely appeal on July 12, 2018.

¶ 12                                    III. Analysis

¶ 13      In reviewing the final decision under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2016)) in this case, we review the administrative decision granting the Department's summary judgment motions and not the circuit court's judgment. *West Belmont, L.L.C. v. City of Chicago*, 349 Ill. App. 3d 46, 49 (2004). Summary judgment is appropriate where the pleadings, depositions, and admissions on file together with any affidavits, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Pielet v. Pielet*, 2012 IL 112064, ¶ 29. Review is *de novo*. *Id.* ¶ 30. Where, as here, parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record. *Id.* ¶ 28.

¶ 14      Here, plaintiffs contend that they are exempt from paying the transfer tax because they satisfied all the conditions in section 3-33-060(L) of the Municipal Code to qualify for the exemption. Specifically, plaintiffs argue that they obtained a transfer of title to the properties, the properties were used primarily for commercial purposes after the transfer, and each of the properties was located in an enterprise zone. Defendants concede that each of the properties was located in an enterprise zone but argue that they were used for residential purposes for low-income families under the Section 8 program, not for commercial purposes, and therefore their transfers are not exempt from taxation under section 3-33-060(L).

¶ 15      A taxpayer bears the burden of proving by clear and convincing evidence that he is entitled to an exemption. *Metro Developers, LLC v. City of Chicago Department of Revenue*, 377 Ill. App. 3d 395, 397 (2007); *Streeterville Corp. v. Department of Revenue*, 186 Ill. 2d 534, 538-39 (1999). The burden is a challenging one because municipal ordinances exempting the transfer

of property from taxation are to be strictly construed in favor of taxation (*Metro Developers, LLC*, 377 Ill. App. 3d at 397), and all debatable questions are resolved in favor of taxation. *Ford Motor Co. v. Chicago Department of Revenue*, 2014 IL App (1st) 130597, ¶ 14.

¶ 16    At issue here is the Department's interpretation of a municipal ordinance, section 3-33-060(L), and of Tax Ruling No. 2. The rules for interpreting municipal ordinances are the same as those that apply to statutory interpretation. *Hayenga v. City of Rockford*, 2014 IL App (2d) 131261, ¶ 17. The primary objective of statutory interpretation is to ascertain and give effect to the intent of the legislature. *Id.* The best indication of the legislative intent is the statutory language, given its plain and ordinary meaning. *Id.* A statute must be viewed as a whole, interpreting the words and phrases in light of the other relevant provisions of the statute. *Crittenden v. Cook County Comm'n on Human Rights*, 2012 IL App (1st) 112437, ¶ 81.

¶ 17    The Department's interpretation of a municipal ordinance is a question of law that we review *de novo*. *Metro Developers*, *LLC*, 377 Ill. App. 3d at 397. Although our review is *de novo*, our supreme court instructs that "a court will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute. Such an interpretation expresses an informed source for ascertaining the legislative intent. A significant reason for this deference is that an agency can make informed judgments upon the issues, based on its experience and expertise." *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 398 (1994).

¶ 18    Thus, we must initially determine whether the municipal ordinance that we are interpreting, section 3-33-060(L), is ambiguous such that we should give substantial weight and deference to the interpretation accorded it by the department of revenue under Tax Ruling No. 2.

An ordinance is ambiguous if it is subject to two or more reasonable interpretations. *West Belmont*, 349 Ill. App. 3d at 50.

¶ 19    Section 3-33-060(L) provides for the exemption from transfer taxes for transfers of title to "real property used primarily for commercial or industrial purposes located in an enterprise zone." Chicago Municipal Code, § 3-33-060(L) (amended Nov. 16, 2011). The issue here is how to interpret the term "commercial purposes" so as to decide whether plaintiffs' use of the properties met the definition of that term. Section 3-33-060(L) does not define the term "commercial purposes," and plaintiffs look to the dictionary definition of "commercial" as "viewed with regard to profit." Merriam-WebsterOnlineDictionary, http://www.merriam-webster.com/dictionary/commercial (last visited June 12, 2019) [https://perma.cc/3Q2J-W82L]. Plaintiffs contend that they are using the properties for a commercial purpose, as the properties are meant to generate a profit for them, and therefore the transfer of the properties is exempt from transfer taxes. However, defendants interpret the term "commercial purposes" differently than plaintiffs, contending that there is a "clear distinction" between commercial and residential properties, such that plaintiffs' use of the properties to provide residential housing does not fall within the exemption. Given that the term "commercial purposes" is not defined in section 3-33-060(L) and is subject to multiple interpretations, we find an ambiguity. Accordingly, although our review here is *de novo*, we give substantial deference to Tax Ruling No. 2, as it is an interpretation of the ambiguous ordinance by the agency charged with its administration and enforcement.

¶ 20    We begin our analysis by considering *West Belmont*, which addressed section 3-33-060(L) by looking to the interpretation accorded it by the department of revenue under Tax Ruling No. 2, as well as to the legislative purpose underlying the Illinois Enterprise Zone Act (20

ILCS 655/1 *et seq.* (West 2002)), which authorized the establishment of enterprise zones. Then we consider *Metro Developers, LLC*, which largely adopted the *West Belmont* analysis.

¶ 21    In *West Belmont*, West Belmont purchased property in a Chicago enterprise zone that had been previously occupied by a furniture retailer, wholesaler, and rental company. *West Belmont*, 349 Ill. App. 3d at 47. Following the purchase, West Belmont demolished the furniture store and began selling and constructing residential townhomes on the property. *Id.* West Belmont sought an exemption from transfer taxes under section 3-33-060(L), claiming it had purchased real property used primarily for commercial purposes in the enterprise zone. *Id.* The Department of Revenue disallowed the exemption, finding that the properties were being developed to build townhomes, which was not a commercial purpose. *Id.* On administrative review, the circuit court affirmed the disallowance of the exemption. *Id.* at 48.

¶ 22    On appeal, West Belmont again argued that it was exempt from the transfer tax because it had purchased real property " 'used primarily for commercial or industrial purposes located in an enterprise zone.' " *Id.* at 47 (quoting Chicago Municipal Code § 3-33-060(L) (amended Dec. 15, 1992))). West Belmont contended that the word "used" in the phrase "used primarily for commercial or industrial purposes" refers only to the historical use of the subject property at the time of the transfer. *Id.* at 49. West Belmont argued that it met the exemption's requirement because the property had been used by the furniture wholesaler for commercial purposes before the transfer to West Belmont. *Id.* The appellate court disagreed, holding that the "purpose of the exemption is to encourage commercial or industrial use of property located in an enterprise zone. It looks to the post transfer future, not to the past." *Id.* at 51. The appellate court concluded that "the exemption turns on the use *the buyer* intends to make of the property." (Emphasis added.) *Id.* at 52.

¶ 23    West Belmont next argued that the use it intended to make of the property (constructing and selling residential townhomes) was a commercial one. In addressing West Belmont's argument, the appellate court looked to Tax Ruling No. 2, section 5, which provided:

"5. Property which is used primarily for commercial purposes is property used primarily for buying or selling of goods and services, or for otherwise providing goods and services, including any real estate used for hotel or motel purposes." *Id.* at 53 (quoting Tax Ruling No. 2, § 5 (eff. Jan. 4, 1999)).

¶ 24    The appellate court found that

"West Belmont's use of the property was not primarily 'commercial' within the meaning of the exemption. While the sale of real estate might be included in a general definition of commerce as the 'exchange of property of any kind,' we do not believe West Belmont's intended use of the land furthered the purpose of the exemption. *** [West Belmont] purchased the property to convert it into residential use. Whatever 'commerce' that might have been involved would come to an end when the homes were built and sold." *Id.* at 53.

¶ 25    West Belmont argued, though, that it also sold the buyers personal property such as appliances, which constituted "goods and services" within the meaning of the tax ruling. *Id.* at 53-54. The appellate court disagreed, noting that "[a]ny sale of goods or services was subsidiary to West Belmont's primary purpose of building and selling townhomes and was not included in the tax ruling's definition." *Id.* at 54.

¶ 26    West Belmont also argued that its use of the property fulfilled the stated goals of the Illinois Enterprise Zone Act (Act) (20 ILCS 655/1 *et seq.* (West 2002)), which is the enabling act authorizing the establishment of enterprise zones. The Act states in pertinent part:

"The General Assembly finds and declares that the health, safety and welfare of the people of this State are dependent upon a healthy economy and vibrant communities; that the continual encouragement, development, growth and expansion of the private sector within the State requires a cooperative and continuous partnership between government and the private sector; and that there are certain depressed areas in this State that need the particular attention of government, business, labor and the citizens of Illinois to help attract private sector investment into these areas and directly aid the local community and its residents. Therefore, it is declared to be the purpose of this Act to explore ways and means of stimulating business and industrial growth and retention in depressed areas and stimulating neighborhood revitalization of depressed areas of the State by means of relaxed government controls and tax incentives in those areas." 20 ILCS 655/2 (West 2002).

¶ 27    West Belmont argued that its replacing a vacant commercial building with a residential development served the Act's purpose of "stimulating neighborhood revitalization." *West Belmont*, 349 Ill. App. 3d at 54. The appellate court disagreed, holding that "the exemption is intended to subsidize only commercial and industrial projects, rather than all forms of revitalization. Using scarce enterprise zone property for residential purposes limits the availability of land for commercial and industrial use." *Id.* The appellate court concluded that West Belmont was not entitled to the transfer tax exemption. *Id.* at 56.

¶ 28    In *Metro Developers, LLC*, Metro Developers purchased real property in Chicago from AP&P Manufacturing, Inc., which manufactured and distributed paper products at that location. *Metro Developers, LLC*, 377 Ill. App. 3d at 396. Metro Developers purchased the property

intending to convert the building located thereon into residential condominiums. *Id.* Metro Developers subsequently developed the property into 175 residential condominiums. *Id* at 397.

¶ 29    Metro Developers sought a transfer tax exemption under section 3-33-060(L), contending that the property was used primarily for commercial or industrial purposes and was located in an enterprise zone. *Id.* at 396. The City of Chicago Department of Administrative Hearings denied Metro Developers' request for an exemption, and on administrative review the circuit court affirmed. *Id.* at 397.

¶ 30    On appeal, the appellate court cited *West Belmont*'s holding that the construction and sale of residential townhomes in an enterprise zone did not qualify for a transfer tax exemption under section 3-33-060(L) because the taxpayer was no longer using the property primarily for commercial or industrial purposes. *Id.* at 398 (citing *West Belmont*, 349 Ill. App. 3d at 51). In accordance with *West Belmont*, the appellate court held that the residential condominiums, which Metro Developers was developing and selling inside the enterprise zone, did not qualify for a transfer tax exemption under section 3-33-060(L) because Metro Developers was using them to provide residential housing instead of for commercial or industrial purposes. *Id.* at 398.

¶ 31    In the present case, in arguing for the transfer tax exemption, plaintiffs contend that they used the properties inside the enterprise zones exclusively for the commercial purpose of generating profits from rents received in exchange for the right of occupancy and for providing various other (free) services to the tenants, such as GED classes, literacy programs, health screenings, and job training. Plaintiffs argue that their use of the property for residential leasing and for the provision of free services to the tenants falls within the "otherwise providing goods and services" clause of section 5 of Tax Ruling No. 2. See Tax Ruling No. 2, § 5 (eff. June 1, 2004), which provides that property is used primarily for commercial purposes when it is used

"primarily for buying or selling of goods and services, *or for otherwise providing goods and services*, including any real estate used for hotel or motel purposes." (Emphasis added.)

¶ 32    However, plaintiffs' argument runs counter to *West Belmont* and *Metro Developers, LLC*, which held that the profits the taxpayers received from selling the townhouses (in *West Belmont*) and the residential condominiums (in *Metro Developers, LLC*), as well as from the services provided pursuant thereto, did not qualify them for the section 3-33-060(L) exemption where the properties were primarily used to provide residential housing inside of the enterprise zones. Similar to *West Belmont* and *Metro Developers, LLC*, plaintiffs primarily used the properties at issue here inside the enterprise zones to provide residential housing. Specifically, plaintiffs operated each of their properties as affordable housing under the Section 8 program, which is designed "[f]or the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing." 42 U.S.C. § 1437f(a) (2012).

¶ 33    Plaintiffs' argument also runs counter to section 7 of Tax Ruling No. 2, which provides that for property to be primarily used for commercial purposes, "more than 50 percent of the property" must be used therefor. Tax Ruling No. 2, § 7 (eff. Jan. 4, 1999). Pursuant to the Section 8 program, plaintiffs dedicated between 87% to 100% of each of their properties to tenant living space. As plaintiffs used close to 100% of the properties for tenant living space instead of for the sale or provision of goods and services, they have failed to meet their burden of proving by clear and convincing evidence that they are entitled to the section 3-33-060(L) exemption for transfer taxes.

¶ 34    Plaintiffs argue that *West Belmont* is distinguishable because, in the course of its analysis that the transfer tax exemption did not apply there, the appellate court noted that "West Belmont did not intend to set up a real estate sales office from which it would continue to sell townhomes

indefinitely." 349 Ill. App. 3d at 53. Contrary to *West Belmont*, plaintiffs here contend that the transfer tax exemption applies because their intent *was* to establish on-site leasing offices from which they would conduct the business of owning, leasing, managing, improving, and maintaining the residential apartments for low-income families. Plaintiffs' argument is unavailing, though, as a careful examination of *West Belmont* reveals that the focus of its analysis was not on the presence or absence of a real estate sales office but rather on the fact that West Belmont was primarily using the property to provide residential townhomes inside the enterprise zone and, therefore, the property transfer was not subject to the transfer tax exemption under section 3-33-060(L). *Id.* at 53-56 (holding that residential real estate development within the enterprise zone does not constitute property used primarily for commercial purposes within the meaning of the exemption). Here, as discussed, plaintiffs primarily use the rental properties to provide residential housing for low-income families in the enterprise zones pursuant to the Section 8 program, and as such, the property transfers do not fall within the section 3-33-060(L) exemption.

¶ 35    Plaintiffs' argument also runs afoul of *Metro Developers, LLC*. Metro Developers constructed a sales office for the purpose of selling residential condominiums on the property it purchased inside the enterprise zone, but the appellate court (applying *West Belmont*) held that because Metro Developers was primarily using the condominiums to provide residential housing, the section 3-33-060(L) transfer tax exemption did not apply. See *Metro Developers, LLC*, 377 Ill. App. 3d at 398. Similarly, here, regardless of any construction of a sales/leasing office, plaintiffs have failed to prove by clear and convincing evidence that the section 3-33-060(L) exemption applies, where plaintiffs primarily use the rental units inside the enterprise zones to provide residential housing for low-income families pursuant to the Section 8 program.

¶ 36    Plaintiffs also argue that the ALJ's decision denying them an exemption under section 3-33-060(L) runs counter to the Act's stated goals of stimulating "neighborhood revitalization of depressed areas" and directly aiding the "local community and its residents." 20 ILCS 655/2 (West 2016). Plaintiffs contend that, by operating the rental properties inside the enterprise zones in a manner that permits lower income residents to live, work, and spend money in their local communities, they are fulfilling the Act's goals of neighborhood revitalization and providing aid to local communities and therefore the transfer of the properties should be found to be exempt from the transfer tax.

¶ 37    We disagree. Section 5 of the Act provides a process for municipalities to designate enterprise zones pursuant to an initiating ordinance and provides the minimum requirements for ordinances designating such areas. *Id.* § 5. One requirement is that the ordinance set forth "provisions for any tax incentives or reimbursement for taxes, which pursuant to state and federal law apply to business enterprises within the zone at the election of the designating county or municipality, and which are not applicable throughout the county or municipality." *Id.* § 5(c)(iii). Section 5(d) further specifies that nothing in the Act shall "prohibit a municipality or county from extending additional tax incentives or reimbursement for business enterprises in Enterprise Zones or throughout their territory by separate ordinance." *Id.* § 5(d). There is no provision in the Act precluding the City from adopting, as it did here in section 3-33-060(L), a tax exemption narrowly drawn to exempt only transfers of title to "real property used primarily for commercial or industrial purposes located in an enterprise zone" as opposed to property designated for residential use. As the properties at issue here are being primarily used by plaintiffs to provide residential housing for low-income families inside of enterprise zones,

instead of for use primarily for commercial or industrial purposes, the ALJ committed no error in finding that the property transfers do not fall within the section 3-33-060(L) exemption.

¶ 38    We further note that in *West Belmont*, 349 Ill. App. 3d at 54, the appellate court held that the Act's primary concern is stimulating business and industrial growth inside enterprise zones and that the development of real property that is primarily used for residential housing does not further the Act's goals and is not exempt from taxation. Pursuant to *West Belmont*, the ALJ did not err in finding that plaintiffs' use of the properties to provide residential housing for low-income families inside the enterprise zones does not further the Act's goals and is not exempt from taxation under section 3-33-060(L).

¶ 39    Finally, plaintiffs make two as-applied constitutional challenges on appeal: (1) that Tax Ruling No. 2 is unconstitutionally vague and (2) that Tax Ruling No. 2 violates the uniformity clause of the Illinois Constitution. A party bringing an as-applied constitutional challenge bears the burden of showing that a constitutional violation arises from the application of the law to a specific set of facts and circumstances. *People ex rel. Hartrich v. 2010 Harley-Davidson*, 2018 IL 121636, ¶ 12.

¶ 40    Plaintiffs forfeited review by failing to raise these constitutional challenges either in the administrative hearing or in the circuit court. See *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212-14 (2008).

¶ 41    Addressing the issue on the merits, we find that plaintiffs' constitutional arguments are unavailing. Ordinances are presumed to be constitutional. *Carter v. City of Alton*, 2015 IL App (5th) 130544, ¶ 18. The challenging party bears the burden of overcoming that presumption and demonstrating that the ordinance is a clear constitutional violation. *Id.* The agency charged with the administration of a municipal ordinance has the authority to adopt interpretative rules to

guide those involved in the assessment procedure and to ensure uniform enforcement of the ordinance. *O'Connor v. A&P Enterprises*, 81 Ill. 2d 260, 269 (1980). Administrative rules, like ordinances, are presumed constitutional and, if reasonably possible, will be construed to uphold constitutionality. *Jackson v. City of Chicago*, 2012 IL App (1st) 111044, ¶ 20; *People v. Molnar*, 222 Ill. 2d 495, 508 (2006).

¶ 42    Plaintiffs here argue that Tax Ruling No. 2, section 7, which provides that more than 50% of the property in the enterprise zone must be used for commercial purposes so as to be exempt from transfer taxation under section 3-33-060(L), is unconstitutionally vague as applied to them. To succeed on their vagueness challenge, plaintiffs must show that people of ordinary intelligence must guess at the meaning of Tax Ruling No. 2, section 7. *Campuzano v. Peritz*, 376 Ill. App. 3d 485, 490 (2007).

¶ 43    Plaintiffs rely on *U.S.G. Italian Marketcaffe, L.L.C. v. City of Chicago*, 332 Ill. App. 3d 1008 (2002). In *U.S.G. Italian Marketcaffe*, the appellate court reviewed the constitutionality of the City's litter tax ordinance, which imposed a tax of 0.5% of the selling price of carry-out food but exempted food that is not carry-out food and is sold for consumption at the place for eating. *Id.* at 1010-11. Carry-out food was defined by the ordinance as " 'food that is wrapped or enclosed in a disposable paper, plastic, metal or other disposable container which permits the purchaser or patron to carry out and consume the food at a location away from the retailer's establishment, whether or not the purchaser or patron in fact carries out and consumes the food at a location away from the retailer's establishment.' " *Id.* at 1011 (quoting Chicago Municipal Code § 3-43-010(A)(1) (adopted at Chi. City Clerk J. Proc. 17491 (Nov. 17, 1999))). The definition further provided that such a determination is made at the time the food is tendered to the patron and does not apply to "leftovers" that are subsequently transferred to a disposable

container and removed from the premises. *Id.* (citing § 3-43-010(A)(1)(a) (adopted at Chi. City Clerk J. Proc. 17491 (Nov. 17, 1999))). The pertinent regulations provided:

" 'A meal or other order consists 'primarily' of food that is not carry-out food in either of the two situations:

(1) more than fifty per cent of the items making up the meal or other order consist of food that is not carry-out food or

(2) more than fifty per cent of the selling price of the meal or other order is attributable to food that is not carry-out food.' " *Id.* at 1018 (quoting Chicago Tax Regulations § 3-43-030 (2000)).

¶ 44    The following examples were provided:

" '(a) In a cafeteria, a customer is served a hamburger and french fries on china plates, but a side order of coleslaw is enclosed in a disposable cup. The exemption [from taxation] applies because the food makes up a meal that consists primarily of food that is not carry-out food, and it is sold for consumption at the place for eating.

(b) In a cafeteria, a customer is served a hamburger and french fries wrapped in disposable materials, but a cup of coffee is served in a china cup. The exemption [from taxation] does not apply because the food makes up a meal that consists primarily of food that is carry-out food.' " *Id.* (quoting Chicago Tax Regulations § 3-43-030 (2000)).

¶ 45    The appellate court concluded that the ordinance was unconstitutionally vague because "the same product with the same packaging sold at the same restaurant may be taxed differently and *** every individual sale must be studied by the server or cashier in order to determine whether the [o]rdinance applies." *Id.* at 1018-19.

¶ 46     Unlike *U.S.G. Italian Marketcaffe*, the amount of space devoted to residential versus commercial use in the properties at issue has already been quantified. The undisputed facts show that each of plaintiffs' properties allocates between 87% and 100% of its space to residential use for low-income families. Those figures are not close to the threshold 50% of the properties that must be used for commercial purposes in order to qualify for the transfer tax exemption under Tax Ruling No. 2, section 7. Accordingly, plaintiffs' as-applied vagueness challenge fails, as plaintiffs need not guess at the meaning of Tax Ruling No. 2, section 7, in order to determine that the tax exemption does not apply to them.

¶ 47     Plaintiffs also argue that, as applied to them, Tax Ruling No. 2, section 5, violates the uniformity clause of the Illinois Constitution, which provides:

> "In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly." Ill. Const. 1970, art. IX, § 2.

¶ 48     The court reviews challenges on uniformity grounds narrowly, and "broad latitude is afforded to legislative classifications for taxing purposes." *Geja's Café v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239, 248 (1992). To survive scrutiny under the uniformity clause, the tax classification must satisfy a two-prong test: the classification must "(1) be based on a real and substantial difference between the people taxed and those not taxed, and (2) bear some reasonable relationship to the object of the legislation or to public policy." *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 153 (2003).

¶ 49     Plaintiffs note that under Tax Ruling No. 2, section 5, hotels/motels are classified as properties primarily used for commercial purposes, thereby exempting their transfer from taxation, whereas the federally funded residential apartment buildings at issue here are not so

classified and therefore are not subject to the exemption. Plaintiffs' argument is that there is no reasonable distinction, under the uniformity clause, between hotels/motels and the federally subsidized residential apartment buildings that justify the different tax classifications. Defendants counter that hotels and motels draw a constant influx of visitors in need of temporary housing, including tourists and out-of-town guests, while residential housing developments, which serve as permanent domiciles, do not. Such a distinction supports different taxes and fees under the uniformity clause. See, *e.g.*, *Northern Illinois Home Builders Ass'n v. County of Du Page*, 165 Ill. 2d 25, 45 (1995) (rejecting a challenge under the uniformity clause to transportation impact fees targeting new development, while excluding existing development, because there is "a real and substantial difference between new development which generates additional traffic, and existing development which does not"). Defendants further argue that the distinction between hotels/motels and residential apartments for tax purposes reasonably relates to the Act's goal of stimulating business growth inside of the enterprise zones. Specifically, defendants contend that the transfer tax exemption for the transfers of hotels/motels inside an enterprise zone encourages their development therein, which in turn generates additional traffic and visitors that patronize businesses and inject money into the local economy. In response to defendants' argument, plaintiffs have provided no evidence that their federally funded housing developments for low-income residents inside the enterprise zones will have the same direct impacts on business growth and the local economy. As the challenging party, plaintiffs bear the burden of persuading the court that the taxing body's explanation is insufficient as a matter of law or unsupported by the facts. *Arangold Corp.*, 204 Ill. 2d at 153. Plaintiffs have failed to meet their burden.

¶ 50    For all the foregoing reasons, we affirm the circuit court.

¶ 51   Affirmed.